UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
UNITED STATES OF AMERICA,

               Plaintiff,

      -against-

J. RONALD HOLLAND, aka James R. Holland,

               Defendant.
-------------------------------------------------------------X

**MEMORANDUM DECISION
AND ORDER**
19-cv-02456 (DG) (JMW)

**WICKS,** Magistrate Judge:

> *"The judicial process demands that a judge move within the framework of relevant legal rules and the covenanted modes of thought for ascertaining them. …The guiding consideration is that the administration of justice should reasonably appear to be disinterested as well as be so in fact."[1]*

This is an action brought by the Government to collect alleged unpaid tax liabilities from Defendant J. Ronald Holland, aka James R. Holland ("Defendant" or "Holland"), who appears *pro se.* Holland's partner, non-party David Risk ("Risk"), although not a lawyer, had been appearing on his behalf in these proceedings. Following this Court's denial of an application to appoint him so-called "next friend" status pursuant to Fed. R. Civ. P. 17 (*see* DE 53), Risk, dissatisfied with the decision, wrote to the Hon. Diane Gujarati, advising her that he was reporting the undersigned to the "Eastern District Court" and the "Department of Justice" for judicial misconduct and further requesting the case be reassigned ("Risk Letter"). (DE 54.)  Given that plaintiff is *pro se*, the Court construes the Risk Letter as both (i) an application for recusal since he seeks reassignment,

---

[1] *Public Utilities Comm'n of D. C.* v. *Pollak,* 343 U. S. 451, 466-467 (1952) (Frankfurter, J., in chambers).

and (ii) reconsideration of the Next Friend Order. For the reasons that follow, that application for recusal is denied, the application for reconsideration is granted, and Defendant is afforded an additional opportunity to provide the Court with any additional information to reconsider the Order denying his motion for next friend status.

## HISTORY OF THE PROCEEDINGS

### Commencement of the Action

The Government commenced this action on April 26, 2019, to collect unpaid individual tax liabilities of Holland for tax years 1983 and 1984 in the amount of $1,949,057.22. (DE 1.) The case was initially assigned to the Honorable Joan M. Azrack and Magistrate Judge Anne Y. Shields. (Electronic Order, dated Apr. 29, 2019.)

Risk's first attempt to speak on behalf of Holland occurred during a "meet and confer" with the Government regarding discovery. (DE 9.) At that time, Risk informed the Government that Holland is physically unable to speak. (*Id.*) However, because Risk, a non-lawyer, was unable to represent Holland, the Government attempted to comply with the "meet and confer" requirement and accommodate Holland by communicating with Holland via letter. (*Id.*) The Government did not get a response. (*Id.*)

At the initial conference, Magistrate Judge Shields instructed the Government to consider a narrative statement submitted by Holland and Risk—which described Holland's disabilities and limitations in detail—and if the Government chose to proceed with the action to provide Holland with every document it intended to rely on in support of its claims. (DE 11, DE 15; Electronic Order, dated Jan 13, 2020.)

### Court Orders Entered to Accommodate Holland

On January 13, 2020, Holland advised the Court that the Government produced documents via a CD, rather than in hardcopy form and, due to technological limitations, Holland was unable

to view the documents in that digital format. (DE 12.) The Court responded by promptly issuing an Order in Holland's favor, directing the Government to produce to Holland hardcopy documents and file proof of service within 10 days. (Electronic Order, dated Jan 13, 2020.) The Government produced its case documents to Holland for a second time by FedEx and although tracking information indicated that the documents had been delivered on December 31, 2019, Holland again claimed he did not receive them. (DE 13; DE 16.) The Government sent the documents for a third time on February 3, 2020. (DE 15.)

**Reassignment to the Hon. Diane Gujarati and Magistrate Judge James M. Wicks**

The case was reassigned to the Hon. Diane Gujarati (Electronic Order, dated Dec. 14, 2020) and later to the undersigned. (Electronic Order, dated May 24, 2021.) The first action by the undersigned was to grant Holland's request to hold the next status conference in person to ensure Holland would have the best opportunity to personally participate in the conference. (Electronic Order, dated July 1, 2021.) That conference was held on July 19, 2021. (DE 26.) Holland, Risk, and counsel for the Government attended. (*Id.*) During this forty-five-minute conference, this Court reassured Holland that he would be afforded a full opportunity to meaningfully participate in this action. Risk described Holland's medical issues and Holland, though unable to speak, indicated an understanding of the proceedings. Upon inquiry, Risk confirmed that Holland "has no cognitive impairments" and suffered no impairment that prevented Holland from communicating through writing. Risk confirmed that no guardian had been appointed in this or any other case, nor had one sought to be appointed.

At the same time, the Court explained that non-lawyers cannot represent *pro se* parties in litigation.[2] The Court repeatedly cautioned that, as a matter of law, Risk would not be permitted

---

[2] *See Berrios v. New York City Hous. Auth.*, 564 F.3d 130, 134 (2d Cir. 2009) ("The fact that a minor or incompetent person must be represented by a next friend, guardian ad litem, or other fiduciary does not alter the principle embodied

3

to represent or speak on behalf of Holland at future appearances or at trial. Risk confirmed he understood.

The Court recommended that Holland consider obtaining legal representation and reviewed options available to Holland to obtain legal assistance in this case. The undersigned emphasized that the Hofstra Law School *pro se* clinic, could provide assistance in the case and possibly find outside *pro bono* representation. (*See id.*)

The Court instructed Holland to collect any and all documents in support of the defenses raised to produce the documents to the Government so that they could be used at trial.[3] (*Id.*) Sensitive to Holland's *pro se* status and medical limitations, rather than just set discovery dates, the undersigned instead set a "phase 1" deadline to give Holland the chance to compile any and all documents he had to support his defense, and to file a letter advising of the status. It was made clear, though, that the matter would proceed, and the discovery items needed to be addressed, whether counsel was retained or not.

The Government informed the Court that interrogatories were served on Holland by mail and Risk confirmed that those interrogatories were received. Holland, on the other hand, did not respond to the interrogatories. (*Id.*) Holland also failed to submit the status report outlining his defenses as directed by the Court's order. (DE 26.) The Court again instructed Holland file a letter with the Court outlining the documents in his possession that support his asserted defenses. (DE 30.)

---

in § 1654 that a non-attorney is not allowed to represent another individual in federal court litigation without the assistance of counsel.")

[3] In a letter docketed on August 3, 2022, Holland raised two defenses: (1) that there was no disclosure regarding alleged misconduct by the IRS Revenue Officer assigned to the case; and (2) that the statute of limitations for collection has expired. (DE 17.)

**Risk Continues to "Represent" Holland**

Another status conference was held on August 24, 2021. (DE 30.) Unfortunately, due to some confusion by the Government's request to appear virtually due to COVID-19 restrictions (*see* Electronic Order, dated Aug. 19, 2021), Holland cancelled arrangements to appear in person and because Holland did not have any means to appear by video, the Court proceeded with the conference by telephone. However, because of Holland's inability to speak, it remained unclear whether Holland was participating in the conference and the conference was cut short. Risk was reminded again that he could not represent or appear on behalf of Holland. (DE 30.)

On September 2, 2021,[4] Risk filed a letter advising he made a request for documents on behalf of Holland in response to Court-ordered discovery and that he was seeking legal representation. (DE 33.) On September 13, 2021, the Court issued an Order indicating it was in receipt of the letter, but "despite the Court's repeated directives on the record that Mr. Risk—who, again, is not an attorney—not appear on Defendant's behalf (DE 26, 30), there is no indication that Defendant wrote, authorized, or even reviewed the submitted letter." (Electronic Order, dated Sept. 13, 2021.) The Court cancelled an upcoming status conference and directed that discovery would close on September 20, 2021. (*Id.*) [5]

**The Potential Application for Next Friend Status**[6]

On October 8, 2021, the Government filed a copy of the cover letter addressed to Holland, indicating that he had been served with the Government's summary judgment motion papers. (DE

---

[4] The letter submitted by Risk is dated August 26, 2021, but was filed on the docket on September 2, 2021.

[5] On September 28, 2021, the Government filed a letter motion seeking sanctions against Holland based on Holland's failure to respond to discovery. (DE 36.) This sanction motion is currently *sub judice*.

[6] The following facts were also recited in the Court's May 4, 2022 Order denying Risk's motion for next friend status. (DE 53.)

38.) Soon thereafter, the Court directed the parties to attend a conference on November 1, 2011, solely for the purposes of discussing a recommendation to the district judge that she appoint Risk as *pro se* Defendant's "next friend" pursuant to Federal Rule of Civil Procedure 17 and applicable New York law ("November Conference").[7] (Electronic Order, dated Oct. 21, 2021.) At the November Conference, the Court instructed Risk that the Court requires evidence on the record sufficient to find that guardian *ad litem* or next friend is needed. (*See* DE 41). Critically, as mentioned *supra*, the Government had already served Holland with its summary judgment papers and Holland had not yet opposed. To emphasize the importance of the of filing a full response to the Government's summary judgment motion, the Court noted that success on the motion would be "game over" for Holland. And so, the undersigned *sua sponte* recommended the district judge hold the summary judgment motion in abeyance pending resolution of the issue of Holland's competency and representation. (*Id.*)

**The Court Provides Risk with Numerous Opportunities to Apply for Next-Friend Status**

Risk was afforded five months and five distinct opportunities to provide verifiable evidence of Holland's need for an appointed representative but failed to do so. Indeed, Risk did not make a "next friend" application by the first deadline set by the Court, or the second. (*See* Electronic Order, dated November 22, 2021; Electronic Order, dated December 7, 2021.) After more than a month had passed, unable to justify further delaying the case any longer in light of Risk's inaction, the Court issued an order recommending Judge Gujarati now consider Plaintiff's pending motion for summary judgment and advising the parties that it would consider a pending motion for sanctions filed by the Plaintiff. (*See* Electronic Order, dated December 7, 2021.)

---

[7] Although Risk had submitted a letter advising that Holland was hospitalized and unable to physically appear for the conference, because the topic of next friend status necessarily involved Risk and as to not delay the case any further, the Court proceeded by telephone conference.

Over a month later, on January 10, 2022, Risk filed a belated motion seeking "next friend" status. (DE 47.) However, despite the Court's prior instruction that evidence demonstrating Holland's need for a guardian was required, Risk submitted a one-page, self-authored letter providing a testimonial of his own caretaker duties. (*Id.*) The Court did not deny the motion at that point but instead, in efforts to obtain the necessary documents to make a Rule 17 determination, the Court issued an Order directing Risk to file under seal medical records evidencing Holland's inability to defend himself by February 11, 2022. (Electronic Order, dated Jan. 12, 2022.) Unfortunately, Risk did not submit medical records, as instructed. Instead, on February 14, 2022, Risk filed another self-authored letter attaching a photo of Holland and a one page "After Visit Summary" from New York Presbyterian ("Visit Summary") which provided limited information concerning a hospitalization for a "complete heart block" and "fall" sustained by Holland from October 16, 2021, through October 22, 2021. (DE 49.)

Once again, rather than denying Risk's application, the undersigned provided Risk yet another opportunity to provide the documentation needed to make a Rule 17 determination. On February 22, 2022, the Court issued an Order indicating that Risk's submission was insufficient and carefully instructed Risk to file "a sworn affidavit from one or more of [Holland's] treating physicians detailing why [Holland] is unable to defend himself in the present action" on or before March 18, 2022. (*See* Electronic Order, dated February 22, 2022.) Again, Risk failed to do so.

As one last effort to get the verifiable evidence needed, on March 29, 2022, the Court issued an Order providing Risk "one final opportunity" to file a "sworn affidavit from one or more of [Holland's] treating physicians detailing why [Holland] is unable to defend himself" on or

7

before April 15, 2022, and cautioned Risk that his "failure to do so will result in a denial of his application for next friend status." (*See* Electronic Order, dated March 29, 2022.) [8]

Risk did not file a sworn affidavit by a treating physician. Instead, on April 12, 2022, Risk submitted a simple, seven-sentence unsworn letter from Brian McNulty, MD, of Peconic Bay Medical Group, wherein Dr. McNulty averred that he has treated Holland for the past two years and that because of multiple health conditions Holland does not have the capacity to participate in any legal action. (*See* DE 52.) The Court considered this letter but ultimately found it insufficient to deem Holland incompetent as to require a "next friend."

**After Five Failed Opportunities to Provide the Court with Needed Documentation, the Court Denies Risk's Application for Next Friend Status**

Risk failed to provide any actual documentation evidencing Holland's incompetency. Accordingly, on May 4, 2022, the Court issued an Order denying the motion by Risk to be appointed "next friend" to Holland. (DE 53.) No appeal was ever filed from that Order.

**Risk Files a Letter Citing Judicial Misconduct**

Rather than appeal, on May 23, 2022, Risk wrote a letter to Judge Gujarati notifying the Court that he is filing a complaint of judicial misconduct against the undersigned and requesting that this case be reassigned. (DE 54.) In his letter, Risk asserts the undersigned has "engaged in conduct prejudicial to the effective and expeditious administration of the business of the court" and has failed to show impartiality, concluding that the undersigned's "compassion would freeze beer." (*Id.*)

## DISCUSSION

No formal motion to recuse was filed. However, in light of the allegations contained in the Risk Letter, coupled with the fact that pending before the undersigned is a motion for summary

---

[8] Certain text was underlined and colored red to emphasize its importance to Risk and Holland.

8

judgment (*see* DE 42) referred to the undersigned for a Report and Recommendation (Electronic Order, dated Dec. 8, 2021), a motion for sanctions (*see* DE 36) also referred to the undersigned for a Report and Recommendation (Electronic Order, dated May 5, 2022) and the fact Holland remains *pro se,* the Risk Letter is construed as an application or motion to recuse. Courts often interpret similar letters as motions for recusal. *See, e.g., Boatswain v. United States*, No. 10-CV-711, 2010 WL 3521917, at *1 (E.D.N.Y. Sept. 1, 2010) ("The Court will construe the Petitioner's letter as a recusal motion"); *Shenk v. Soc. Sec. Admin.*, No. 12-CV-4370 SLT, 2012 WL 5196783, at *6 (E.D.N.Y. Oct. 19, 2012) ("Although Plaintiff has never specifically requested that this Court recuse itself, this Court will, in an abundance of caution, construe Plaintiff's letter to Chief Judge Amon as a motion for recusal"); *Flemming v. City of New York*, No. 02 CV 6613 SLT LB, 2006 WL 898081, at *6 (E.D.N.Y. Mar. 31, 2006) ("Based on Plaintiff's *pro se* status, his complaint of Judicial Misconduct, and the letters to this Court from Plaintiff accusing the Court of failing to afford him leniency as a *pro se* party. . . the Court will treat these submissions a motion for recusal. . .").

The next threshold issue is whether Risk, as a non-party, has standing to bring a motion for recusal. The authority is clear that he does not. *See United States v. Sciarra*, 851 F.2d 621, 635 (3d Cir. 1988) ("We also acknowledge those precedents asserting, albeit in dicta, that section 455 may be invoked by a party to an action"); *HC2, Inc. v. Messer*, No. 20-CV-3178 (LJL), 2022 WL 61370, at *2 (S.D.N.Y. Jan. 6, 2022) ("There is no basis for recusal. With the substitution of the Chapter 7 Trustee, Delaney was terminated as a party to this action and thus has no standing to invoke the recusal statute"). Accordingly, Risk has no standing to seek the undersigned's recusal. Notwithstanding, and again because Holland continues to appear *pro se,* the Court will consider the merits of such an application.

9

The legal standard for judicial recusal is found in the statute. Under 28 U.S.C. § 455(a), "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). "In determining whether Section 455(a) requires recusal, the appropriate standard is objective reasonableness—whether 'an objective, disinterested observer fully informed of the underlying facts, [would] entertain significant doubt that justice would be done absent recusal." *United States v. Carlton*, 534 F.3d 97, 100 (2d Cir.), cert. denied, 555 U.S. 1038 (2008). "Recusal motions are committed to the sound discretion of the district court." *Shenk*, 2012 WL 5196783, at *7.

Requests to have a judge recused are serious requests and must be treated as such. The integrity of the judicial system is at stake. *See Lamborn v. Dittmer*, 726 F. Supp. 510, 515 (S.D.N.Y. 1989) ("Recusal motions are serious matters. . . not strategic devices to judge shop.") Indeed, it is just as important for a judge *not* to recuse when no grounds exist as it is to recuse when grounds do exist. *See Shenk*, 2012 WL 5196783, at *7. Otherwise, the public's faith and confidence in the judicial system could be severely compromised and placed at great risk. So, in considering the factors in deciding whether to recuse, "the trial judge must carefully weigh the policy of promoting public confidence in the judiciary against the possibility that those questioning his impartiality might be seeking to avoid the adverse consequences of his presiding over their case." *In re Drexel Burnham Lambert Inc.*, 861 F.2d 1307, 1312 (2d Cir. 1988). This is because "[l]itigants are entitled to an unbiased judge; not to a judge of their choosing." *Id.* "Movants must overcome a presumption of impartiality, and the burden for doing so is 'substantial.'" *Metro. Opera Ass'n, Inc. v. Loc. 100, Hotel Emps. & Rest. Emps. Int'l Union*, 332 F. Supp. 2d 667, 670 (S.D.N.Y. 2004).

10

It is worth noting that sometimes motions for recusal are used as tools by litigants to achieve a tactical advantage. *See, e.g., In re Drexel Burnham Lambert Inc.*, 861 F.2d 1307, 1309 (2d Cir. 1988) (describing baseless recusal motions as "an additional and potent tactical weapon in the skilled practitioner's arsenal"). Indeed, seeking a judge's recusal simply because a litigant is unhappy with a judge's ruling or case management—in other words, judge-shopping—is insufficient grounds to warrant recusal. *See In re Aguinda*, 241 F.3d 194, 206 (2d Cir. 2001). When made, such tactical motions can have serious consequences. *See Watkins v. Smith*, 561 F. App'x 46, 47 (2d Cir. 2014) (imposing sanctions on the plaintiff for having such frivolous grounds as a foundation for a motion to recuse); *see also In re Olsen*, 358 B.R. 609, 625 (Bankr. S.D.N.Y. 2007) (finding a motion for recusal sanctionable because it was "filed for an improper purpose.")

As then-District Judge Joseph F. Bianco observed,

> The Supreme Court has made clear that "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky v. United States,* 510 U.S. 540, 555 (1994). Unfavorable rulings may constitute a valid basis for recusal if they "show reliance upon an extrajudicial source" and do constitute a valid basis if they "reveal such a high degree of favoritism or antagonism as to make fair judgment impossible." *Id.; see also Sheet Metal Workers' Nat'l Pension Fund v. Amodeo,* No. 09-CV-0121 (SJF) (ARL), 2016 WL 3080807, at *10 (E.D.N.Y. May 27, 2016); *Da Silva Moore v. Publicis Groupe,* 868 F. Supp. 2d 137, 154 (S.D.N.Y. 2012). Judicial rulings can "only in the rarest of circumstances evidence" the requisite degree of favoritism. *Liteky,* 510 U.S. at 551.

*Harrison v. County of Nassau,* 15-CV-2712 (JFB) (AKT) (E.D.N.Y. Sept. 24, 2018).

Here, the undersigned has an obligation to prevent such judge-shopping behavior. *See McCann v. Commc'ns Design Corp.*, 775 F. Supp. 1506, 1508–09 (D. Conn. 1991) ("Where there is no basis for recusal other than a litigant's unhappiness with a judge's decisions, the presiding judge has an obligation to prevent 'judge shopping' by refusing to recuse himself.")

The mere filing of a complaint of judicial misconduct in and of itself is insufficient to require a judge to recuse. *Boatswain*, 2010 WL 3521917, at *1. In determining a motion to recuse, a sitting judge is placed in the difficult spot of determining a motion of which the judge is the subject, while at the same time upholding the obligation to remain unbiased and neutral, exercising restraint not to view the motion as an attack on the judge, but rather as one questioning the judge's impartiality, something litigants have the right to do. As such, an honest "hard look in the mirror" is required.

Here, the Court embraces the opportunity take such a "hard look." Upon reflection, and in light of the circumstances, the undersigned does not find any facts or grounds extant that would justify recusal.

*First,* Risk, as a non-party, does not have standing in this case. His loyalty to Holland as a partner is both evident and in fact admirable. However, for the reasons stated in the Court's Order denying his "next friend" or guardian status in the Rule 17 Order, he simply has no standing to seek recusal of an assigned judge in this case. *See Sciarra*, 851 F.2d at 635; *HC2, Inc.*, 2022 WL 61370, at *2. In this regard, the Court also notes that no appeal, pursuant to Rule 72(a), to the District Judge from the Rule 17 Order, was ever filed by Holland or Risk challenging that determination.

*Second,* the reasons that Risk provides in his letter do not meet the substantial burden. The mere filing, or threat of filing, of a complaint of misconduct is not sufficient in and of itself to warrant recusal. Moreover, Risk grossly mischaracterizes the November Conference. (DE 41.) The sole purpose the Court held the November Conference was in fact to encourage Risk to seek "next friend" status. At that point, the Government had *already* filed its motion for summary judgment and Holland failed to oppose. The undersigned did not urge the Government to file the

12

motion for summary judgment or demonstrate any favorability or bias in favor of the Government. In fact, the Court made a *sua sponte* recommendation to Judge Gujarati to hold the summary judgment motion in abeyance pending resolution of the issue of Holland's competency and representation. (DE 41.)  Risk's quote in his letter about the Court stating the summary judgment motion was "game over" is correct, but unfortunately misleading and cleverly and selectively taken out of context.  The Court in fact was cautioning Risk and encouraging him to retain counsel because of the seriousness of the pending summary judgment and how it could be "game over" if Holland did not file opposition papers.  That is, the Court was conveying that it was critically important that he get some help and to do so soon.

Furthermore, there was no mistake as to the single New York Presbyterian Hospital record. Risk writes in his letter that Holland's stay at New York Presbyterian was a "5 week institutionalization" but the only record before the Court is a 1-page "After Visit Summary" submitted by Risk which indicates Holland's visit at New York Presbyterian lasted from "10/16/2021-10/22/2021." (DE 45-1.)  The balance of his missive is simply an inflammatory attack and provides no legal or factual basis to recuse.

*Third*, a guardian *ad litem* or next friend are not to be appointed tritely.  Indeed, "[b]ecause a litigant possesses liberty interests in avoiding the stigma of being found incompetent. . . and in retaining personal control over the litigation, the Due Process Clause of the Fifth Amendment limits the district court's discretion with respect to the procedures used before appointing a guardian *ad litem*." *Neilson v. Colgate-Palmolive Co.*, 199 F.3d 642, 651 (2d Cir. 1999).  Hence why "[t]he duty to appoint a guardian *ad litem* or make such order as [the court] deems proper, is triggered by actual documentation or testimony of mental incompetency." *Cannon v. Port Auth. of New York & New Jersey*, No. 15-CV-4579 (RA), 2020 WL 6290665, at *2 (S.D.N.Y. Oct. 27,

13

2020) (internal quotes and cites omitted). Courts routinely decline to appoint guardians where there is a lack of verifiable evidence as to the individual's competency. *See e.g. Syfert v. City of Rome*, No. 619CV0775GTSML, 2022 WL 2180455, at *15 (N.D.N.Y. June 13, 2022) (finding comments from Plaintiff's sister about his disabilities, their effect on his day-to-day functioning, and a letter from CNY Brain & Spine Neurosurgery to contain nothing undermining Plaintiff's competency and not the type of verifiable evidence that require a guardian *ad litem*); *Chapman v. Ring's End, Inc.*, No. 3:17-CV-01084 (VAB), 2020 WL 3430350, at *5 (D. Conn. June 23, 2020) (finding plaintiff's wife's and counsel's lay representations that plaintiff was impaired in understanding and producing speech to be insufficient to appoint a guardian); *Williams v. New York State Off. of Mental Health*, No. 10-CV-1022 SLT JO, 2011 WL 2690088, at *6 (E.D.N.Y. Apr. 25, 2011), *report and recommendation adopted*, No. 10-CV-1022 SLT JO, 2011 WL 2708378 (E.D.N.Y. July 11, 2011) (even where plaintiff had a history of mental illness and the Court reviewed clinical evaluations of Plaintiff, the Court found that there was not sufficient evidence in the record to conclude that Plaintiff was incompetent and that a guardian *ad litem* should be appointed); *Santiago v. C.O. Campisi Shield No. 4592*, 91 F.Supp.2d 665, 667 (S.D.N.Y.2000) (finding appointment of a guardian *ad litem* to an illiterate plaintiff "would be inappropriate under any standard" because he was not "incompetent in the sense contemplated by Rule 17(c)"; "plaintiff mistakenly equates his illiteracy with incompetence, an argument supported neither by logic nor law"); *Mandeville v. Wertheimer*, No. 01-CIV.4469(JSR)(DF), 2002 WL 432689, at *1 (S.D.N.Y. Mar. 19, 2002) (finding claims that plaintiff was unable to represent himself as a result of injuries from an underlying accident such as "severe headaches and earaches, dizziness, mood swings, confusion and an imbalance problem" does not make plaintiff "incompetent within the meaning of Rule 17(c)").

So too here, without verifiable evidence of Holland's incompetence, the Court is unable to conclude that the appointment of "next friend" or a guardian is warranted. Nonetheless, given that Holland is *pro se*, and to afford Holland and Risk every opportunity, the Court construes the Risk Letter to seek reconsideration and/or renewal of the Next Friend Order (*see generally Darnley v. Ameriquest Mortg. Co.*, No. 06-CV-4265 (DLI), 2020 WL 1536316, at *1 (E.D.N.Y. Mar. 30, 2020) ("*[p]ro se* submissions are construed 'liberally and interpret[ed] ... to raise the strongest arguments that they suggest'") and grants such application. *Id.* ("Motions for reconsideration are governed by Local Civil Rule 6.3 and are entrusted to the discretion of the court").[9] Accordingly, Risk and Holland may submit any additional proof as outlined above, for the Court's consideration.

## **CONCLUSION**

For the foregoing reasons, the undersigned declines to recuse on the basis of Risk's letter application. However, to the extent Risk seeks reconsideration or renewal of the Next Friend Order, such application for reconsideration is granted. Risk is directed to provide the Court with any additional evidence and support to reconsider the Next Friend Order on or before July 22, 2022. Risk is again encouraged to consult the Hofstra Law School *pro se* clinic to ensure any additional submissions satisfy the burden laid out above. Finally, because the Government's motion for summary judgment (DE 42) and motion for sanctions (DE 36) have been pending since

---

[9] Holland and Risk are reminded that, as they have been instructed all along, a non-attorney is not allowed to represent another individual in federal court litigation without the assistance of counsel. *See Berrios*, 564 F.3d at 134. Therefore, even if Risk is appointed as Holland's guardian, Risk will need to seek counsel in order to proceed. *See, e.g. Perricone-Bernovich v. Cmty. Dev. Corp. of Long Island, Inc.*, No. 21CV3149WFKCLP, 2021 WL 3409168, at *2 (E.D.N.Y. Aug. 4, 2021) ("Perricone-Bernovich cannot proceed on behalf of her brother, unless she is an attorney admitted to practice in this jurisdiction. . . she must obtain counsel to represent her in her capacity as guardian or 'next friend'"); *Alano v. Sebelius*, No. 5:12-CV-1833 GTS/DEP, 2013 WL 4806230, at *2 (N.D.N.Y. Sept. 9, 2013) ("The fact that plaintiff may be unable to proceed *pro se*, even for reasons of incompetency, does not alleviate the requirement under section 1654 'that a non-attorney is not allowed to represent another individual in federal court litigation without the assistance of counsel'").

September 28, 2021, and November 2, 2021, respectively, remain unopposed, the Court is affording Holland an *additional* opportunity to submit opposition to those pending motions. Accordingly, Holland may submit any opposition to the aforementioned motions on or before July 29, 2022. After that date, the motions will be considered *sub judice*, awaiting decision.

Dated: Central Islip, New York
       July 11, 2022

**S O   O R D E R E D:**

/s/ *James M. Wicks*
JAMES M. WICKS
United States Magistrate Judge